FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 12, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA C.,[1] | No. 1:18-cv-03182-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 16, 20 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 20. The parties consented to proceed before a magistrate judge. ECF No.

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

9.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 16, and denies Defendant's motion, ECF No. 20.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 30, 2015, Plaintiff filed an application for Title XVI supplemental security income benefits, alleging a disability onset date of June 30, 2015. Tr. 164-72. The application was denied initially, Tr. 99-107, and on reconsideration, Tr. 109-15. Plaintiff appeared at hearings before an administrative law judge (ALJ) on July 21, 2017, Tr. 41-73, and on September 14, 2017, Tr. 32-40. On November 22, 2017, the ALJ denied Plaintiff's claim. Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 30, 2015, the application date. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: hypothyroidism; musculoskeletal conditions described as sciatica,

right shoulder pain; and mental health conditions described as depression, PTSD, and panic disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [L]ifting and carrying 20 pounds occasionally, 10 pounds frequently; sitting up to six hours in an eight-hour day, standing and walking up to six hours total in an eight-hour day; pushing and pulling as much as lifting and carrying; [Plaintiff] would be limited to reaching occasionally overhead with the right upper extremity; [Plaintiff] would be limited to never working around hazards such as heights, heavy operating machinery, or operating a motor vehicle; [Plaintiff] would be limited to superficial contact with coworkers and the general public (passing people in hallways[)] but no direct contact as part of the job requirements, tasks would need to be accomplished independently without needing to coordinate efforts with coworkers; [Plaintiff] would need occasional supervision with supervisors.

Tr. 20.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as small products assembler, price marker, and laundry folder. Tr. 25. Therefore, the ALJ concluded Plaintiff was not under a disability, as

ORDER - 7

defined in the Social Security Act, from June 30, 2015, the date the application was filed, though November 22, 2017, the date of the ALJ's decision. Tr. 26.

On July 31, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

2. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 16 at 1-2.

## DISCUSSION

### A. Plaintiff's Symptom Complaints

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discount her symptom testimony. ECF No. 16 at 14-19.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R.

§ 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

    The ALJ found that Plaintiff's impairments could reasonably be expected to

cause the alleged symptoms; however, Plaintiff's statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely

consistent with the evidence.  Tr. 20.

    *1. Improvement with Treatment*

    The ALJ found Plaintiff's symptom complaints were inconsistent with her

record of improvement with treatment.  Tr. 21-22.  The effectiveness of treatment

is a relevant factor in determining the severity of a claimant's symptoms.  20

C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,

1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ found Plaintiff's symptom allegations were less credible because her mental health symptoms improved significantly with treatment.  Tr. 21-22; *see* Tr. 373 (June 18, 2015: Plaintiff reported feeling more comfortable leaving her house to attend therapy); Tr. 363 (July 30, 2015: Plaintiff reported PTSD, sleep disturbances, and dissociated symptoms improved with treatment); Tr. 365-66 (August 20, 2015: Plaintiff reported fewer dissociated episodes with medication); Tr. 367 (September 3, 2015: Plaintiff reported sleep disturbances and dissociative episodes improved with treatment); Tr. 391 (October 1, 2015: Plaintiff reported being able to tolerate sitting in the counselor's waiting room for five minutes without panicking); Tr. 393 (October 8, 2015: Plaintiff reported being able to attend a medical appointment on her own); Tr. 436 (November 5, 2015: Plaintiff reported medication helped control PTSD and dissociative symptoms); Tr. 449 (December 10, 2015: same); Tr. 458 (January 14, 2016: Plaintiff reported sleep and appetite improved significantly with medication); Tr. 462 (March 24, 2016: Plaintiff reported psychotherapy was very helpful); Tr. 465 (April 28, 2016: Plaintiff reported medication was helpful for stabilizing mood and she did not have any new dissociative episodes); Tr. 468 (June 16, 2016: Plaintiff reported her

PTSD symptoms were markedly improved and anxiety levels were relatively low with treatment); Tr. 470 (September 15, 2016: Plaintiff's PTSD continued to improve with medication and behavioral interventions).

The ALJ concluded that this evidence was inconsistent with Plaintiff's alleged mental health limitations. Tr. 22. However, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23 (9th Cir. 2014). Here, although the ALJ cites treatment records that document improvement in some symptoms, those same records also document ongoing struggles with other symptoms that are consistent with Plaintiff's symptom reports. *See* Tr. 359 (June 16, 2015: Plaintiff reported improvement with Lamictal but continued to have dissociative episodes with impulsive anger and some PTSD anxiety); Tr. 361 (July 9, 2015: Plaintiff reported continuing to

struggle with PTSD symptoms and continuing agoraphobia[3] and labile mood); Tr. 363 (July 30, 2015: Plaintiff reported better sleep but continued to have nightly nightmares); Tr. 365-66 (August 20, 2015: Plaintiff reported far fewer dissociative episodes, but reported medication was not helping with sleep or PTSD nightmares, sleep was much worse, and lack of sleep was leading to depression and decreased stress tolerance during the day); Tr. 367 (September 3, 2015: Plaintiff reported improved sleep, nightmares, and mood, and no dissociative episodes, but she continued to struggle with ongoing agoraphobia); Tr. 441 (November 5, 2015: Plaintiff reported emotional regulation exercises helped her but reported increased anxiety and changed sleeping habits to avoid stressors); Tr. 445 (November 12, 2015: Plaintiff reported increased anxiety and feeling terrified after receiving a telephone call from the welfare office); Tr. 449-50 (December 10, 2015: Plaintiff reported improvement in PTSD, dissociative episodes, and sleep disruptions, but continued to struggle with agoraphobia and anxiety); Tr. 458 (January 14, 2016: Plaintiff reported stable mood and sleep and appetite improved significantly, but continued to struggle with anxiety); Tr. 462 (March 24, 2016: Plaintiff reported

---

[3] Although not identified as a severe impairment at step two, Plaintiff's treatment records indicate agoraphobia is a feature of her panic disorder, which was identified as a severe impairment.  Tr. 17; *see, e.g.,* Tr. 356, 371, 373, 442, 508.

psychotherapy was helpful but also reported a recent dissociative episode and cutting). Additionally, the record reflects Plaintiff experienced a significant decline in functioning between September 2016 through June 2017, Tr. 601-07, which the ALJ dismissed as "not very persuasive" without providing evidence in the record to support this conclusion. Tr. 22.

The ALJ's summary of Plaintiff's treatment notes discusses symptoms that Plaintiff reported improved but omits Plaintiff's reports of ongoing or increased symptoms.[4] Tr. 21-22. The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23. In fact, the longitudinal treatment notes are consistent with Plaintiff's hearing testimony that treatment has helped her with nightmares, insomnia, and violent episodes, but that Plaintiff still struggles significantly with anxiety and being able to leave her property despite her other improvements. Tr. 48, 50, 57. The ALJ's conclusion

_____

[4] The ALJ also found it "suspicious" that Plaintiff's reports of increased symptoms occurred approximately one month before her administrative hearing. Tr. 22. Evidence of being motivated by secondary gain can support an ALJ's rejection of testimony evidence. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). However, the ALJ offered no actual evidence of impropriety in support of this observation. Tr. 22.

ORDER - 14

that Plaintiff's mental health symptom reporting was undermined by evidence of improvement with treatment is not supported by substantial evidence.

### 2. *Gaps in Treatment*

The ALJ found Plaintiff's symptom complaints were undermined by gaps in her treatment history. Tr. 22. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Social Security Ruling 16-3p instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2016 WL 1119029, at *8 (March 16, 2016).

The ALJ observed Plaintiff reported she stopped seeking treatment at times due to financial limitations and transportation issues. Tr. 22. Disability benefits may not be denied because of the claimant's failure to obtain treatment the claimant cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ considered this reason but found it was "not very persuasive" because Plaintiff did not report transportation issues in the past and because Plaintiff's treatment notes did not sufficiently document transportation issues. Tr. 22. The ALJ's reasoning is not persuasive for two reasons. First, Plaintiff's past

access to transportation is not determinative of her later access to transportation. Second, Plaintiff's treatment notes do document transportation issues and other financial constraints on her ability to attend treatment. *See* Tr. 463 (March 24, 2016: Plaintiff reported psychotherapy being significantly helpful but being unable to attend due to financial problems); Tr. 601 (June 21, 2017: "Part of the problem about getting back into treatment is that she has transportation issues."); Tr. 606 (July 13, 2017: Plaintiff could not afford weekly sessions due to financial strains). To the extent Plaintiff's resources prohibited her from accessing treatment, this was not a clear and convincing reason to discredit her symptom testimony.

The ALJ also noted Plaintiff testified that she did not seek treatment at times because of her symptoms. Tr. 22. When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, the ALJ found Plaintiff's allegation was "not very persuasive," but did not cite any evidence to support the ALJ's

conclusion that Plaintiff's treatment interruptions were not attributable to her symptoms. Tr. 22; *see Molina*, 674 F.3d at 1113-14. To the contrary, the record indicates that Plaintiff's treatment gap from September 2016 through June 2017 was attributable to Plaintiff's increased agoraphobic symptoms. *See* Tr. 601. The ALJ's finding that Plaintiff's inconsistent treatment history undermined her subjective symptom reporting is not supported by substantial evidence.

### 3. *Daily Activities*

The ALJ found Plaintiff's symptom complaints were inconsistent with her daily activities. Tr. 22. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ concluded Plaintiff's daily activities were inconsistent with the level of mental impairment she alleged.  Tr. 22-23; *see* Tr. 185-87 (Plaintiff reported performing personal care activities with no limits, preparing meals monthly, performing housework daily, shopping once per month with her husband, drawing and crocheting as calming activities); Tr. 393 (Plaintiff reported attending a medical appointment on her own); Tr. 465 (Plaintiff reported shopping with her son's girlfriend, who also has anxiety, so they can lean on each other for support).  The ALJ's conclusion is not supported by substantial evidence.  Plaintiff testified that her biggest limitation was struggling to leave her own property due to her mental health symptoms.  Tr. 48.  Plaintiff's ability to perform tasks around her own home, shop on a monthly basis with support from others, and attend one medical appointment alone are not inconsistent with the limitations Plaintiff reported.  This finding is not supported by substantial evidence.

The ALJ also concluded that Plaintiff's daily activities were inconsistent with the physical limitations she alleged.  Tr. 22-23.  The ALJ observed Plaintiff reported physical activities including walking and exercising at home, completing household chores, moving rocks with her son, helping her husband work on cars, and caring for her husband after he had a heart attack.  Tr. 22-23; *see* Tr. 410, 465, 486, 516, 574.  The ALJ reasonably concluded that these activities were

inconsistent with Plaintiff's allegation that her back pain symptoms contributed to her inability to work. Tr. 21; *see* Tr. 171.[5]

### 4. Lack of Supporting Medical Evidence

The ALJ found the level of impairment Plaintiff alleged was not supported by the medical evidence. Tr. 21. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

_____

[5] The Court notes that in her application for benefits Plaintiff alleged that her mental health impairments and back pain interfered with her ability to work. Tr. 171. At the hearing, Plaintiff indicated that her pain management had improved over time, Tr. 49, and that she was physically likely capable of performing certain work, Tr. 47-48. However, Plaintiff indicated her mental health impairments were the primary barrier to employment. Tr. 47-48.

Here, the ALJ concluded that the objective evidence regarding Plaintiff's back pain was inconsistent with Plaintiff's symptom allegations. Tr. 21; *see* Tr. 270, 340 (August 23, 2011: MRI impression was negative examination of lumbar and thoracic spine). The ALJ also observed Plaintiff was not observed to have difficulty with walking due to back pain and that Plaintiff reported improvement in her back pain through medication and exercise. Tr. 21; *see* Tr. 408, 410, 423, 473-74, 479-80, 485. Additionally, the ALJ found that the objective evidence of Plaintiff's shoulder pain did not support a finding of disabling limitation. Tr. 21; *see* Tr. 487 (October 25, 2016: normal range of motion and strength in shoulder). The ALJ also observed Plaintiff had a history of hypothyroidism that required only routine and conservative treatment. Tr. 21. The ALJ's finding that the medical evidence did not support that these impairments were disabling is supported by substantial evidence.

Here, however, Plaintiff acknowledged at the hearing that she would likely be able to perform some physical work if it were not for her mental impairments. Tr. 47-48. Moreover, an ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857. Because the ALJ erred in the other findings regarding Plaintiff's subjective symptom testimony,

this reason cannot stand alone to support the ALJ's conclusion that Plaintiff's symptom testimony was "not entirely consistent" with the evidence.  Tr. 20.

In sum, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Daniel McCabe, M.D.; Renee Eisenhauer, Ph.D; and Michael Regets, Ph.D.  ECF No. 16 at 8-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan,* 246 F.3d at 1201-02 (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

*1. Dr. McCabe*

Dr. McCabe, Plaintiff's treating psychiatrist since May 2014, opined on June 18, 2015 that Plaintiff had moderate limitation in her ability to maintain attention and concentration for extended periods; moderate limitation in her ability to perform regular activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; moderate limitation in her ability to sustain an ordinary routine without special supervision; marked limitation in her ability to

work in coordination with or proximity to others without being distracted by them; marked limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; marked limitation in her ability to interact appropriately with the general public; marked limitation in her ability to ask simple questions or request assistance; marked limitation in her ability to accept instructions and respond appropriately to criticism from supervisors; marked limitation in her ability to get along with coworkers or peers without distracted them or exhibiting behavioral extremes; marked limitation in her ability to respond appropriately to changes in the work setting; marked limitation in her ability to travel in unfamiliar places or use public transportation; that Plaintiff was likely to miss six or more days of work per month due to psychological symptoms; and that Plaintiff was suffering from severe PTSD and dissociative episodes brought on by interactions with others that could lead to physical violence. Tr. 346-50. On June 22, 2017, Dr. McCabe reviewed his June 2015 opinion and opined that his previously opined limitations remained in place and that Plaintiff was suffering from severe symptoms of agoraphobia. Tr. 500. The ALJ gave Dr. McCabe's opinions little weight. Tr. 24. Because Dr. McCabe's opinions were contradicted by Dr. Eisenhauer, Tr. 80-81, and Dr.

Regets, Tr. 93-94, the ALJ was required to provide specific and legitimate reason

to reject Dr. McCabe's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. McCabe's opinion was inconsistent with Plaintiff's

record of improvement with treatment. Tr. 24. An ALJ may discredit physicians'

opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc.*

*Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In support of this conclusion,

the ALJ cited Dr. McCabe's treatment notes generally and characterized them as

"often assess[ing] her symptoms and functioning as being improved." Tr. 24

(citing Tr. 505-98). However, as discussed *supra*, the ALJ's discussion of the

medical evidence is impermissibly selective. Although Dr. McCabe's treatment

notes document improvement in some of Plaintiff's PTSD symptoms, they also

document ongoing struggles with anxiety and agoraphobia symptoms. *See, e.g.,*

Tr. 359 (June 16, 2015: Plaintiff reported improvement with Lamictal but

continued to have dissociative episodes with impulsive anger and some PTSD

anxiety); Tr. 361 (July 9, 2015: Plaintiff reported continuing to struggle with PTSD

symptoms and continuing agoraphobia and labile mood); Tr. 363 (July 30, 2015:

Plaintiff reported better sleep but continued to have nightly nightmares); Tr. 365-

66 (August 20, 2015: Plaintiff reported far fewer dissociative episodes, but

reported medication was not helping with sleep or PTSD nightmares, sleep was

much worse, and lack of sleep was leading to depression and decreased stress

tolerance during the day); Tr. 367 (September 3, 2015: Plaintiff reported improved sleep, nightmares, and mood, and no dissociative episodes, but continued to struggle with ongoing agoraphobia); Tr. 449-50 (December 10, 2015: Plaintiff reported improvement in PTSD, dissociative episodes, and sleep disruptions, but continued to struggle with agoraphobia and anxiety); Tr. 462 (March 24, 2016: Plaintiff reported psychotherapy was helpful but also reported a recent dissociative episode and cutting). Dr. McCabe's treatment notes also document Plaintiff's significant decline in functioning between 2016 and 2017. Tr. 601-02. The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23. In fact, Dr. McCabe's treatment notes documenting some improved symptoms are consistent with his changed assessment that in 2015, Plaintiff was limited by PTSD and dissociative episodes, but in 2017, Plaintiff was limited by severe symptoms of agoraphobia. Tr. 350, 500. Additionally, "[c]ycles of improvement and debilitating symptoms are a common occurrence [in mental health cases], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1017). Even if some evidence in the record shows some of Plaintiff's symptoms improved, there is no evidence in the record to support a

conclusion that Plaintiff's symptoms improved to a level where she would be capable of working. The ALJ's conclusion that Dr. McCabe's opinion was inconsistent with Plaintiff's record of improvement with treatment is not supported by substantial evidence.

Second, the ALJ found that Dr. McCabe's opinions were inconsistent with Plaintiff's daily activities. Tr. 24; *see* Tr. 185-87 (Plaintiff reported performing personal care activities with no limits, preparing meals monthly, performing housework daily, shopping once per month with her husband, drawing and crocheting as calming activities); Tr. 393 (Plaintiff reported attending a medical appointment on her own); Tr. 465 (Plaintiff reported shopping with her son's girlfriend, who also has anxiety, so they can lean on each other for support). An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). However, as with the ALJ's discussion of Plaintiff's symptom testimony, the ALJ failed to explain how the identified activities, which document a limited ability to perform tasks away from her own home, are inconsistent with Dr. McCabe's opinions, particularly as they relate to her agoraphobia. The ALJ's conclusion that Dr. McCabe's opinions were inconsistent with Plaintiff's activities is not supported by substantial evidence.

1    Third, the ALJ found Dr. McCabe's opinions about Plaintiff's ability to

2    sustain concentration and persistence were not supported by objective evidence, as

3    the ALJ concluded Plaintiff was not observed to have significant concentration

4    problems.  Tr. 24.  Relevant factors when evaluating a medical opinion include the

5    amount of relevant evidence that supports the opinion and the consistency of the

6    medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028,

7    1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  However, the ALJ gave significant

8    weight to the same limitation as opined by Dr. Eisenhauer and Dr. Regets.  Tr. 23;

9    *compare* Tr. 348 (Dr. McCabe: Plaintiff moderately limited in her ability to

10   maintain attention and concentration for extended periods) *with* Tr. 80 (Dr.

11   Eisenhauer: Plaintiff moderately limited in her ability to maintain attention and

12   concentration for extended periods); Tr. 93 (Dr. Regets: same).  Specifically, the

13   ALJ found the opinions of Dr. Eisenhauer and Dr. Regets were "generally

14   consistent with the objective evidence of the claimant's mental functioning."  Tr.

15   23.  The ALJ's conclusion rejecting the same opinion from Dr. McCabe is

16   inconsistent and not supported by substantial evidence.

17   Overall, the ALJ failed to provide specific and legitimate reasons, supported

18   by substantial evidence, to discredit Dr. McCabe's opinion.

19

20

-

ORDER - 27

### 2. Dr. Eisenhauer and Dr. Regets

Dr. Eisenhauer reviewed the record on November 9, 2015 and opined Plaintiff had moderate limitation in her ability to carry out detailed instructions; moderate limitation in her ability to maintain attention and concentration for extended periods; moderate limitation in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; that Plaintiff could carry out simple one-to-three step instructions; that Plaintiff could maintain concentration, persistence, and pace for up to two hours continuously; that Plaintiff could maintain adequate attendance and complete a normal workday and workweek within normal tolerances of a competitive workplace; that Plaintiff would not be able to carry out tasks that are more detailed than this on a consistent and regular basis; that Plaintiff had moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors; that Plaintiff had moderate limitation in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; that Plaintiff retained the capacity to interact with others on an occasional and superficial basis; and that Plaintiff retained the ability to accept instructions from a supervisor. Tr. 80-81.

Dr. Regets reviewed the record on March 9, 2016 and opined Plaintiff had moderate limitation in her ability to carry out detailed instructions; moderate limitation in her ability to maintain attention and concentration for extended periods; moderate limitation in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; that Plaintiff could do simple and repetitive work and would need more time for more detailed work; that Plaintiff had moderate limitation in her ability to interact appropriately with the general public; that Plaintiff had moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors; that Plaintiff had moderate limitation in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; that Plaintiff retained the capacity to interact with others on an occasional and superficial basis; that Plaintiff retained the ability to accept instructions from a supervisor; and that Plaintiff would be able to ask simple questions. Tr. 93-94.

The ALJ gave both reviewers' opinions significant weight. Tr. 23. Plaintiff asserts the ALJ erred in crediting these reviewing source opinions over the opinion of treating source Dr. McCabe. ECF No. 16 at 10-12. Generally, an ALJ should accord more weight to the opinion of a treating physician than to that of a non-treating physician. *See Andrews*, 53 F.3d at 1040-41. However, the opinion of a

non-examining physician may serve as substantial evidence if it is "supported by other evidence in the record and [is] consistent with it." *Id*. at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Here, the ALJ credited the opinions of Dr. Eisenhauer and Dr. Regets because the ALJ found them to be consistent with the objective evidence, Plaintiff's treatment history, Plaintiff's record of improvement with treatment, and Plaintiff's daily activities. Tr. 23. However, as discussed throughout this order, the ALJ's characterization of the medical and other evidence is impermissibly

selective and not supported by substantial evidence. In light of the ALJ's errors in evaluating the record as a whole, the ALJ's consideration of the reviewing source opinions is similarly not supported by substantial evidence.

The Court also notes that the ALJ credited the opinions Dr. Eisenhauer and Dr. Regets over the opinions of Dr. McCabe because the reviewers had the opportunity to review "significant portions" of the record. However, neither source reviewed records after March 2016, which document a significant deterioration in symptoms, including a five-month period in which Defendant was unable to leave her own property due to agoraphobia. Tr. 601. Additionally, although it was in the record at the time of review, neither source documented reviewing Dr. McCabe's 2015 opinion. Tr. 76-77, 86-88. The Commissioner concedes this was error. ECF No. 20 at 6.[6]

Overall, the ALJ's evaluation of the medical opinion evidence is not supported by substantial evidence.

---

[6] The Commissioner also concedes it was error to rely on the reviewers' unexplained opinions over the opinion of a treating source where the reviewers' opinions were not sufficiently explained. ECF No. 20 at 6.

**C. Remedy**

Plaintiff urges this Court to remand this case for an immediate award of benefits.  ECF No. 16 at 19-20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on

ORDER - 32

remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence … may well prove enlightening" in light of the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002). Here, the record calls for further development. As discussed *supra*, Plaintiff experienced a significant decline in functioning between September 2016 and June 2017. Tr. 601-07. However, when Plaintiff reengaged in treatment in June 2017, her treatment providers established a three-to-six-month treatment plan to enable Plaintiff to improve her anxiety symptoms, return to prior levels of functioning, and be able to go out to places without experiencing fear. Tr. 602, 605, 606-07. However, Dr. McCabe also opined in June of 2017 that he continued to agree with his 2015 assessments that Plaintiff had limitations that would last at least 12 months. Tr. 500. This potentially conflicting evidence raises a question as to whether Plaintiff's impairments meet the 12-month durational requirement for benefits. *See* 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). Accordingly, further proceedings are necessary to develop the record. On remand, the ALJ is instructed to order a psychological consultative examination and, if necessary, take testimony from a medical expert, and conduct a new sequential analysis.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED August 12, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 34